**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jeremy Lee Koons,

Plaintiff,

v.

Gwendolyn Smith, et al.,

Defendants.

No. CV-23-00873-PHX-KML (CDB)

**ORDER**

Plaintiff Jeremy Lee Koons, an inmate at the Red Rock Correctional Center (RRCC), alleges correctional officer Gwendolyn Smith and RRCC Warden Martin Frink violated his First Amendment rights when Smith threatened to write him up for a disciplinary violation if he filed a prison grievance. Smith and Frink (collectively, "RRCC defendants") move for summary judgment based on a failure to exhaust and on the merits. (Doc. 48.) Because the parties dispute facts central to both exhaustion and the elements of First Amendment retaliation, defendants' motion is denied.

## I. Background

Following screening under 28 U.S.C. § 1915A(a), a single claim in Koons's first amended complaint remains against two defendants. (Doc. 8 at 1.) Koons is an Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) prisoner currently incarcerated at RRCC. (Doc. 49 at 1.) During the events Koons alleges, Smith was a correctional officer assigned to Koons's housing unit and Frink was the warden of the RRCC. (Doc. 49 at 8.) The following facts are undisputed.

On May 1, 2023, Smith and Frink were part of a group of security staff conducting a walk-through of Koons's housing unit. (Doc. 49 at 9.) These walk-throughs were common and necessary to maintain institutional order and safety. (Doc. 49 at 9.) During the May 1 walk-through, Smith saw a plastic dayroom chair in Koons's cell. (Doc. 49 at 12; Doc. 55 at 29.)[1] Inmates are not allowed to keep dayroom chairs in their cells and the chairs are considered contraband subject to confiscation because they could pose security concerns (like being broken or shaved down to create a shank or used as a shield to block entry into a cell). (Doc. 49-2 at 21, 39, 63, 76, 86–100, 119–120.) But the dayroom chairs are not specifically listed as contraband and determining they are contraband requires cross-referencing various policies and considering institutional security concerns. (*E.g.* Doc. 49-2 at 63–64, 86–100.) Koons did not believe the chair was contraband. (Doc. 55 at 31–32.) So when Smith told Koons she was confiscating the plastic chair, Koons said he did not want to argue with her and would file a grievance against her instead. (Doc. 55 at 29.) Smith returned the chair to the dayroom. (Doc. 49 at 13.)

The parties' declarations differ significantly regarding what happened after Koons said he would file a grievance. Koons asserts Frink began picking at his cell door frame and asked whether certain rubber doorstoppers were supposed to be there. (Doc. 55 at 29.) Smith replied they were not supposed to be there and then stated if "[Koons] wr[o]te that grievance on her" she would "write [him] up for tampering with the door, a Class 'A" violation." (Doc. 55 at 29.) Koons's cellmate filed a declaration containing that same version of events. (Doc. 55 at 43.) Koons also denies ever tampering with his cell door.

[1] Doc. 55 is Koons's declaration. Defendants argue the Court should disregard the declaration because it includes "inadmissible, uncorroborated, and self-serving statements devoid of admissible evidentiary support." (Doc. 60 at 2.) But Koons's declaration sets forth his version of events, which is based on his personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) (declaration used to oppose a motion for summary judgment must be on personal knowledge and set out facts that would be admissible in evidence); *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (the district court cannot "disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature[,]" even if it is uncorroborated). Koons's declaration is also corroborated by a declaration from his cellmate. (Doc. 55 at 42-44.) In any event, the fact "[t]hat an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact," *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999), and the court cannot make credibility determinations at the summary judgment stage. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

(Doc. 55 at 31.)

Smith denies threatening to write Koons up for tampering with his door. (Doc. 49-2 at 40.) Although Frink does not remember the May 1 incident, he declares he would have intervened and counseled Smith not to threaten action based on an inmate filing a grievance if she had made such a statement. (Doc. 49-2 at 117, 121.) It is undisputed that tampering with a cell door using rubber doorstoppers would be a major security violation that could lead to a disciplinary ticket (or even a felony prosecution), that Koons was never issued such a ticket or any other adverse action based on the chair or the doorstoppers, and that his cell door was free of unauthorized rubber doorstoppers by some point after May 1 (assuming they were once there). (Docs. 49-2 at 118–119; 55 at 31.)

Koons did not file a grievance regarding the dayroom chair. (Docs. 49-2 at 9; 55 at 29.) In fact, after filing ten grievances between March 2020 and March 2023, Koons has not filed any other grievances after May 1, 2023. (Docs. 49-2 at 9; 55 at 33.) He did, however, call the ADCRR retaliation hotline, submit inmate letters, and file both the instant lawsuit and another Pinal County Superior Court case related to an incident involving tobacco and vegetable confiscation. (Docs. 48 at 15; 63 at 2.)

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

At summary judgment, the judge's function is not to weigh the evidence and find the truth but to determine whether there is a genuine issue for trial. *Id*. at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." *Id.* at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. The court *need* only consider the cited materials but *may* also consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the prison's applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the type of relief available through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show there was an available administrative remedy and the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936–37 (a defendant must demonstrate that *some* relief remained available in the grievance process). If the defendant makes that showing, the burden shifts to the prisoner to demonstrate that he actually exhausted administrative remedies or to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden rests with the defendant and summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168, 1172; *see* Fed. R. Civ. P. 56(a).

Defendants argue Koons failed to exhaust administrative remedies because he did not grieve Smith's alleged retaliatory threat. (Doc. 48 at 6–7.) They supply detailed evidence regarding the inmate grievance procedures for ADCRR inmates at RRCC and show that Koons did not use those procedures to challenge the May 1, 2023 incident. (Doc. 49 at 2–8.) Through that evidence, defendants have met their initial burden of showing an administrative remedy was available at RRCC and Koons did not use it to grieve the threatened disciplinary action at issue here. *See Albino*, 747 F.3d at 1169, 1172.

Koons admits he did not file a grievance, but his declaration explains he "felt like Defendant Smith's threat of retaliation made the grievance process unavailable to [him]." (Doc. 55 at 29.) In fact, Koons says he has not filed a single grievance after Smith threatened to write him up for a disciplinary violation if he grieved the chair incident. (Doc. 55 at 33.) Defendants dispute that Smith made the threat but do not challenge Koons's assertion that he has not filed a grievance since then; to the contrary, their records seemingly support his statement by negative implication. (*See* Doc. 49 at 7–8 (noting Koons submitted ten grievances from March 2020 to March 2023, but supplying no evidence of any grievances filed after May 1, 2023).)

Exhaustion is not required when circumstances render administrative remedies "effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). Administrative remedies are effectively unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). The Ninth Circuit has specifically recognized that "the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). To excuse a failure to exhaust under *McBride*, a prisoner must satisfy a subjective standard by "provid[ing] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id.* at 987–88*; see also id.* at 988 (in applying the subjective prong, considering whether the prisoner "has

sufficiently alleged that he was actually deterred"). He must also meet an objective standard by showing "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Id.* at 987.

Koons has met *McBride*'s subjective and objective tests here. Subjectively, his verified statements that (1) he told Smith he planned to file a grievance about the plastic chair, (2) Smith responded that she would write Koons up for the major disciplinary violation of tampering with his cell door if he did, and (3) Koons has not filed a single grievance since then because he fears retaliation—after filing ten grievances in the three years before—provide a basis for the court to find he was actually deterred from filing a grievance. *Compare Mork v. Russell*, No. 3:21-cv-00077-MMD-CSD, 2024 WL 578990, at *4 (D. Nev. Feb. 12, 2024) (prisoner's "allegation that he took the statement as a threat to not file grievances . . . is sufficient to satisfy the subjective prong, as he could have reasonably believed that [the officer] would take action . . . if he filed a grievance"), *with Moore v. Hickey*, No. CV-18-08221-PCT-DLR (MTM), 2021 WL 8972092, at *11 (D. Ariz. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 2144864 (May 14, 2021) (prisoner did not establish subjective fear of retaliation where he filed multiple additional grievances after challenged incident).

Koons's evidence also meets the objective test. Although an alleged threat of retaliation "need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance, there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to use the grievance system." *McBride*, 807 F.3d at 988 (internal citation omitted). Here, crediting Koons's version of a disputed fact as the court must, Smith explicitly threatened to write Koons up for a major disciplinary violation if he filed a grievance about the chair. It would not be unreasonable for a prisoner of ordinary firmness to understand Smith as threatening retaliation if Koons filed a grievance and accordingly avoid the grievance process based

on the severity of the threat.

On this record, a question of fact as to what Smith said precludes summary judgment for defendants based on Koons's failure to exhaust administrative remedies.

**IV. First Amendment Retaliation**

Five basic elements underlie a viable claim of First Amendment retaliation in the prison context: (1) a state actor took some adverse action against a prisoner; (2) because of (3) that prisoner's protected conduct; and the adverse action (4) chilled the prisoner's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The plaintiff bears the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). A variety of conduct can be actionable as retaliatory if undertaken for an improper purpose. *See, e.g., Rizzo v. Dawson*, 778 F.2d 527, 531–32 (9th Cir. 1985). The resulting injury need not be tangible to support a claim. *See Hines v. Gomez*, 108 F.3d 265, 267, 269 (9th Cir. 1997). But retaliation claims must be evaluated in light of concerns about excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials when evaluating the asserted legitimate penological reasons for allegedly retaliatory conduct. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

**A. Adverse Action**

The parties dispute whether Smith threatened to write Koons up for a major disciplinary violation if Koons filed a grievance about the dayroom chair. Defendants argue Koons only provides "speculative and conclusory allegations" to establish an adverse action because although Smith disputes (with Frink's support) whether she made the threatening statement, it is undisputed neither defendant ever wrote him up for a disciplinary violation or influenced any other adverse consequences.[2] (Doc. 48 at 12–14.)

---

[2] Defendants also argue Koons provided insufficient notice of his allegations regarding the chair and the cell door. (Doc. 60 at 7.) But Koons's first amended complaint alleged Frink "started touching the doorstoppers in the door frame that are part of the assembly and asked Defendant Smith if they are supposed to be there, insinuating Plaintiff placed something in

A "mere threat of harm can be an adverse action, regardless of whether it is carried out[,] because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). To constitute an adverse action, the threat must be "explicit and specific," for example, stating that "discipline, transfer, or some other negative result would occur" after a protected activity. *Id*. Crediting Koons's version of a material fact the parties dispute—*i.e.*, whether Smith threatened to report him for a disciplinary violation if he filed a grievance about the chair—Koons would sufficiently state an adverse action. Under *Brodheim*, it does not matter that defendants never filed a disciplinary violation related to the doorstoppers or caused any other negative consequences for Koons. *Id.* at 1271 ("The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat.").

**B. Retaliatory Motive**

To prevail on a retaliation claim, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* (citation and internal quotation omitted). To raise a triable issue as to motive, Koons must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *Allen v. Iranon,* 283 F.3d 1070, 1077 (9th Cir. 2002). Such circumstantial evidence includes (1) proximity in time between the protected activity and alleged retaliation; (2) a defendant's expression of opposition to the speech; or (3) other evidence that the reasons proffered by defendant for the adverse action were false and pretextual. *See McCollum v. Cal. Dep't of Corrs. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).

Crediting Koons's version of the facts as the court must at the summary judgment

---

the doorframe to prevent the door from locking," and Smith responded, "no there [sic] not supposed to be there, and if you write that grievance about the chair, I'll write you a major ticket for tampering with a security device." (Doc. 7 at 4.) These allegations provided sufficient notice that Koons was alleging Frink took an adverse action by searching for a disciplinary violation that did not exist. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a pro se litigant may "bolster[ ] his claim by making more specific allegations . . . in later filings"); *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (court must give a pro se litigant "the benefit of any doubt in ascertaining what claims he raised in his complaint and argued to the district court") (simplified).

stage, he has offered both direct evidence of retaliatory motive (Smith saying she would institute disciplinary proceedings if Koons filed a grievance) and circumstantial supporting evidence (temporal proximity between when Koons threatened to file a grievance and Smith made the threat, and the opposition to Koons filing a grievance inherent in Smith's threat to sanction him for it). Defendants argue Koons cannot establish a retaliatory motive because they had legitimate security reasons for both confiscating the dayroom chair and ensuring no doorstoppers remained on the cell door. (Doc. 48 at 14–15.) But that misunderstands the relevant inquiry. Because the adverse action Koons alleges is not confiscating the dayroom chair or ridding his door of stoppers but instead threatening to file a disciplinary violation based on a grievance, summary judgment could be granted only if defendants showed a non-retaliatory motive for making the threat. *See Brodheim*, 584 F.3d at 1270–71 (analyzing whether a prison grievance was the "motivating factor" for issuing a warning that constituted an implicit threat). Defendants' motion is therefore denied on this ground, too.

**C. Protected Conduct**

Prisoners have a First Amendment right to file prison grievances; retaliation against them for exercising that right is a constitutional violation. *Rhodes*, 408 F.3d at 566–67; *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (prisoner may not be penalized for exercising the right of redress for grievances).

Defendants do not dispute that Koons has a First Amendment right to file grievances, but argue he was not engaged in protected activity because any grievance regarding the chair would have been futile as he was committing rules violations. (Doc. 48 at 12.) Threatening to file a *frivolous* grievance is not a protected activity. *See Canell v. Multnomah Cnty.*, 141 F. Supp. 2d 1046, 1059–60 (D. Or. 2001) (a plaintiff "cannot state a First Amendment claim based on alleged retaliation for filing a grievance when the underlying grievance is frivolous"); *see also Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1005 (7th Cir. 2005). But defendants do not argue Koons's grievance would have been frivolous, and both parties spill pages of ink (and attach multiple exhibits) debating whether

the dayroom chair was contraband under RRCC policy. At a minimum, Koons asserts he believed nothing in the written rules prohibited him from keeping the chair in his cell, and its status as contraband is not immediately obvious without cross-referencing multiple facility policy provisions. Even if meritless or futile, the court cannot find Koons's grievance would have been frivolous—and therefore unprotected—under the undisputed facts.

**D. Chilling Effect**

The fourth element in a prison retaliation claim requires a prisoner to show the defendant's adverse actions chilled the exercise of his First Amendment rights. *Rhodes*, 408 F.3d at 568–69. A prisoner plaintiff need not demonstrate a "total chilling of his First Amendment rights," only that the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id*. Koons can satisfy this element by showing that he suffered more than minimal harm, because "harm that is more than minimal will almost always have a chilling effect." *Id.* at 567 n.11.

Defendants argue Koons has continued to engage in protected activities after the May 1 incident by filing this lawsuit, calling the ADCRR retaliation hotline, submitting inmate letters, and attempting to amend his first amended complaint with further allegations connected to Smith. (Doc. 48 at 15 (citing Docs. 32; 39).) They filed a supplemental reply arguing Koons engaged in further protected activity by filing a lawsuit in state court alleging Smith and a former RRCC warden committed conversion and trespass on February 20, 2024, when they confiscated tobacco and whole vegetables from him. (Doc. 63 at 5.) That Koons later engaged in some protected activity does not mean his protected speech was not chilled on May 1 when, under his version of the facts, Smith threatened to file a disciplinary violation against him if he filed a grievance. *See Rhodes*, 408 F.3d at 563–64, 567–68 (holding prisoner-plaintiff could potentially show chilling of his First Amendment rights despite having engaged in protected activity after the alleged adverse action); *see also Armstrong v. Spearman*, No. 1:13–cv–00246–AWI–SAB (PC), 2015 WL 222506, at *3 (E.D. Cal. Jan. 14, 2015), *report and recommendation adopted*,

2015 WL 778579 (Feb. 24, 2015) (same).

Moreover, it appears to be undisputed that Koons has not filed a single grievance after May 1, 2023, after filing ten grievances in the three years before that. A reticence to file grievances via an administrative process in which Koons could more readily seek to remedy his complaints—even when he is otherwise able to file lawsuits or call a hotline—could constitute more than minimal harm. *See Rhodes*, 408 F.3d at 567–69. And defendants have not argued—and the court cannot find—that a person of ordinary firmness would not have been chilled by the threat of a major disciplinary violation if he filed a grievance.

**E. Legitimate Penological Interests**

A plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. The court must accord deference to prison officials in evaluating a retaliation claim, *id*. at 807, and "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989); *see O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (deterring criminal activity and maintaining prisoner security are legitimate penological interests that justify regulations on prisoner mail).

Defendants argue they have legitimate penological interests in preventing inmates from keeping dayroom chairs in their cells and affixing unauthorized doorstoppers to their cell doors. (Doc. 48 at 15–17.) The court has no reason to doubt it. But that is not the "conduct of which [Koons] complains." *See Pratt*, 65 F.3d at 806. Instead, he is challenging an alleged threat Smith made if he filed a grievance. *See Brodheim v. Cry*, No. 2:02–cv–0573 FCD KJN P, 2011 WL 2362553, at *9, *9 n.7 (E.D. Cal. June 9, 2011) (describing Ninth Circuit's "narrow construction" of the conduct necessitating analysis of legitimate penological interest); *see also Sawyer v. McDonald*, 768 F. App'x 669, 671 (9th Cir. 2019) (district court erred in granting summary judgment without analyzing whether alleged suppression of speech was rationally related to legitimate penological interest). Because

they do not accept Koons's version of facts as true and proffer legitimate penological reasons for the alleged conduct he actually challenges, defendants' motion for summary judgment cannot be granted.

**V. Damages**

Defendants seek to limit the potential damages in this case to $1.00 in nominal damages because Koons has not established actual injury from any constitutional violation. (Doc. 48 at 17.) They produce evidence showing Koons never complained about or received treatment at the RRCC for the mental and emotional anguish he alleges he suffered as a result of the First Amendment retaliation. (Doc. 48 at 17.) Defendants also argue that even if Koons could establish a First Amendment violation, he is not entitled to punitive damages because he produces no evidence defendants were motivated by an evil motive or intent, or were reckless or callously indifferent to his constitutional rights. (Doc. 48 at 17–18.) And they argue no injunctive relief could be ordered because Frink is no longer at the RRCC and Smith is not assigned to Koons's housing unit. (Doc. 48 at 18.)

Under 42 U.S.C. § 1997e(e), a prisoner may not recover compensatory damages for mental or emotional injuries suffered in custody without a prior showing of physical injury. But to the extent a prisoner has actionable claims premised on constitutional violations rather than mental or emotional injuries, his claims are not limited by § 1997e(e). *See Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir.2002); *see also, e.g.*, *Cockcroft v. Kirkland*, 548 F.Supp.2d 767, 776–77 (N.D. Cal. 2008) ("§ 1997e(e) does not apply to claims for compensatory damages not premised on emotional injury . . . [t]he fact that [the plaintiff] never suffered any physical injury as a result of [the defendant's] alleged acts may make his Eighth Amendment claim of very little financial value but does not make the claim non-existent"). Nominal and punitive damages would still potentially be available under § 1997e(e) even if Koons had suffered no physical injuries at all. *Oliver*, 289 F.3d at 629. And more importantly, the Ninth Circuit has expressly held that § 1997e(e) does not apply to First Amendment claims like Koons's. *Canell v. Lighter*, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief

wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. . . . § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought."), *abrogated on other grounds as recognized by Nealy v. Shinn*, No. 23-15385, 2024 WL 3842094, at *2 (9th Cir. Aug. 16, 2024).

As to whether punitive damages may be warranted by defendants' state of mind, that issue is reserved for the jury. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16 (1991) (noting that, with respect to punitive damages, "[t]his has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case") (internal citation and quotation omitted); *Smith v. Wade*, 461 U.S. 30, 54, 56 (1983) (a jury may be permitted to assess and award punitive damages). A jury may assess punitive damages in a § 1983 action when a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56. Crediting Koons's version of events, a reasonable juror could conclude defendants' conduct was recklessly or callously indifferent to Koons's First Amendment rights. Defendants' request to limit or bar damages at this stage will therefore be denied.

/

/

/

/

/

/

/

/

/

/

/

/

Accordingly,

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 48), and the Motion is **denied**.

(2) This action is referred to Magistrate Judge Deborah M. Fine to conduct a settlement conference. Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Fine's chambers at (602) 322-7630 within 14 days to schedule a date for the settlement conference.

Dated this 10th day of September, 2025.

**Honorable Krissa M. Lanham**
**United States District Judge**